# IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF GEORGIA SAVANNAH DIVISION

**FILED**
Dana Wilson, Clerk
United States Bankruptcy Court
Savannah, Georgia
By ElizabethBonanni at 3:16 pm, Nov 25, 2025

In re:

ALICE K. KOFFAH,

*Debtor*.

)
)
)
)
)
)
)
)

Chapter 13

Number 18-41820-EJC

## OPINION ON MOTION TO REOPEN

Before the Court is the Motion to Re-Open Case and Request for Expedited Hearing (the "Motion to Reopen") filed by Alice K. Koffah, the Debtor in this case. (Dckt. 113). The Debtor commenced this Chapter 13 case in 2018, and the Court confirmed her plan in 2019. Four years later, in 2023, she was injured in an automobile accident, giving rise to a personal injury claim. The Debtor hired counsel to prosecute that claim in state court but did not immediately disclose the claim in the bankruptcy case. In 2024, she completed all required payments under her Chapter 13 plan and received a discharge, and the Court closed the case. Now, in 2025, she requests that the Court reopen the case, ostensibly to disclose the personal injury claim and to administer any proceeds arising from it.

The Debtor acknowledges, however, that the real reason she seeks reopening is to avoid an adverse ruling in the pending state-court action under the doctrine of

1

judicial estoppel. That equitable doctrine, fashioned to protect the integrity of the judicial process, applies where "the plaintiff (1) took a position under oath in the bankruptcy proceeding that was inconsistent with the plaintiff's pursuit of the civil lawsuit and (2) intended to make a mockery of the judicial system." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017). *See also Fulton Cnty. v. Ward-Poag*, 310 Ga. 289, 296 (2020). Based on her failure to disclose the personal injury claim in bankruptcy, the Debtor fears, not without reason, that her personal injury case may be subject to dismissal. But that issue is for the state court to decide. In this bankruptcy case, it's too late to administer any proceeds of the personal injury claim, so the Court will deny as futile the Debtor's Motion to Reopen.

## I. **Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A). The Court makes the following findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this matter by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. <u>Findings of Fact</u>

The facts in this case are both straightforward and undisputed. On December 13, 2018, the Debtor filed a Chapter 13 petition. (Dckt. 1). Creditors filed secured claims totaling $182,544.65 and unsecured claims totaling $195,014.86. Her primary unsecured claim is that of her student loan creditor, Navient Solutions, LLC, on behalf of the Department of Education, in the amount of $164,312.81. (Claim No. 9-1). In her plan, the Debtor proposed to pay the Chapter 13 Trustee $829.00 per month for 60 months, with general unsecured claims to receive "a 0.00% dividend or a pro rata share of $100.00, whichever is greater." (Dckt. 6, p. 1, ¶ 2(a); p. 3, ¶ 4(h)). On April 23, 2019, the Court confirmed her plan. (Dckt. 22). Four months later, in August 2019, the Debtor modified her plan, increasing payments to $944.00 per month, to account for a post-petition mortgage arrearage. (Dckt. 39, 41, 42).

Forty-eight months after her original plan was confirmed, the Debtor suffered injuries in a May 1, 2023 automobile accident. That accident gave rise to a personal injury cause of action. As will be discussed, that post-confirmation cause of action was property of the bankruptcy estate under *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239 (11th Cir. 2008). The Debtor later testified that she hired counsel to prosecute the personal injury claim but failed to promptly notify her bankruptcy counsel of the automobile accident, and consequently the Debtor never amended her Schedule A/B in this bankruptcy case to disclose the claim.

3

A year later, on June 11, 2024, the Chapter 13 Trustee notified the Court and the parties that the Debtor completed all payments under her confirmed plan. (Dckt. 107). On July 15, 2024, the Debtor received her discharge. (Dckt. 109). On October 24, 2024, the Chapter 13 Trustee filed his final report and account reflecting that he received $50,866.14 from the Debtor over the life of her plan, from which he paid $2,541.05 to her general unsecured creditors. (Dckt. 111, pp. 2-3). The estate having been fully administered, on November 25, 2024, the Court entered a final decree closing this case. (Dckt. 112).

In July 2025, according to the Debtor, she engaged new personal injury counsel and notified her new counsel of the bankruptcy case. At that time, her new personal injury counsel informed the Debtor's bankruptcy counsel of the personal injury claim. On July 14, 2025, the Debtor, through bankruptcy counsel, moved to reopen this case. (Dckt. 113). In that motion, the Debtor stated that she had "a personal injury [claim] pending from an automobile accident that occurred on May 1, 2023," and that her claim was "ready for litigation." (Dckt. 113, p. 1, ¶ 4). She requested that the Court reopen this case "for the limited purpose of amending the schedules and administering the asset." (Dckt. 113, p. 1).

The Motion to Reopen was scheduled for hearing on August 13, 2025. (Dckt. 114). But the Court did not call the case because the parties notified the Clerk that a consent order would be submitted. The Court, however, had concerns about the

4

timeliness of any attempt to modify the Debtor's completed Chapter 13 plan under 11 U.S.C. § 1329 to distribute to unsecured creditors any personal injury claim proceeds, and thus about the efficacy of reopening this case. For that reason, the Court scheduled a continued hearing for September 24, 2025. (Dckt. 114, 117).

At the September 24, 2025 hearing, the Court took testimony from the Debtor and heard argument from Debtor's bankruptcy counsel and from counsel for the Chapter 13 Trustee. Debtor's counsel represented that the Debtor received $50,000.00 through her underinsured motorist policy with Progressive Insurance, that the at-fault driver had a $100,000.00 automobile insurance policy, that the Debtor had commenced her personal injury suit in the State Court of Chatham County, and that the state-court case is in discovery. Counsel candidly acknowledged that the Debtor seeks to reopen this bankruptcy case primarily to prevent the state-court defendants from raising a judicial estoppel defense in a motion for summary judgment. For her part, the Trustee's counsel supported reopening, arguing that, despite the statutory deadlines of § 1329, the Debtor's plan could still be modified to administer the personal injury claim proceeds because the Debtor failed to disclose the claim while her bankruptcy case was pending. At the hearing's conclusion, the Court took the matter under advisement.

## III. Conclusions of Law

In a Chapter 13 case, the debtor "must propose a plan to use future income to repay a portion (or in the rare case all) of his debts over the next three to five years." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 498 (2015). Whether the "applicable commitment period" lasts for three or five years depends on whether the debtor's income is below-median or above-median. 11 U.S.C. § 1325(b)(4). In either case, the maximum duration of a Chapter 13 plan is five years. *See* 11 U.S.C. § 1322(d)(1)-(2) (providing that an above-median debtor's plan "may not provide for payments over a period that is longer than 5 years," and "the court may not approve," for a below-median debtor, "a period that is longer than 5 years"). *See also Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873, 878 (11th Cir. 2010) (noting that § 1322(d) "sets the absolute maximum time period of a Chapter 13 bankruptcy plan for an above[-]median income debtor at five years, no exceptions."). Here, the Debtor, with the Trustee's consent, seeks to reopen this case to administer a potential asset—the personal injury claim proceeds—even though the Debtor has already completed her five-year plan. The question before the Court is whether it would be possible to administer that asset upon reopening.

### A. A Closed Bankruptcy Case Should Not Be Reopened if It Would Be Futile

Bankruptcy Rule 5010 provides that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Fed. R. Bankr.

6

P. 5010. Section 350(b), in turn, states that "[a] case *may* be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b) (emphasis added). Here, the Debtor seeks to reopen this case to amend her schedules to disclose her personal injury claim and to administer the proceeds of that claim—in other words, to "administer assets," a permissible ground for reopening explicitly listed in § 350(b).

Reopening is a ministerial act. *In re Mohammed*, 536 B.R. 351, 355 (Bankr. E.D.N.Y. 2015). "Merely granting a motion to reopen does not afford the parties any substantive relief, but rather provides the opportunity to request further relief." *In re Clary*, 440 B.R. 122, 123 (Bankr. E.D. Va. 2010) (quoting *Horizon Aviation of Va., Inc. v. Alexander (In re Alexander)*, 296 B.R. 380, 382 (E.D. Va. 2003)). The moving party has the burden of demonstrating sufficient cause to reopen. *In re Dalezios*, 507 B.R. 54, 58 (Bankr. D. Mass. 2014). "The decision to reopen should be made on a case-by-case basis based on the particular circumstances and equities of [the] case, and should be left to the sole discretion of [the] bankruptcy court." *Id.* (quoting *Diaz-Nieves v. Irizarry (In re Irizarry)*, No. 6:10-bk-18876-KSJ, 2012 WL 592886, at *1 (Bankr. M.D. Fla. Feb. 17, 2012)). Some factors that courts consider include the following:

> (1) the length of time that the case was closed;
>
> (2) whether a nonbankruptcy forum has jurisdiction to determine the issue that is the basis for reopening the case;

7

(3) whether prior litigation in the bankruptcy court determined that another court would be the appropriate forum;

(4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen;

(5) the extent of the benefit to any party by reopening; and

(6) whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted.

*In re Kim*, 566 B.R. 9, 12 (Bankr. S.D.N.Y. 2017) (citing *In re Atari, Inc.*, No. 13-10176 (JLG), 2016 WL 1618346, at *4–5 (Bankr. S.D.N.Y. Apr. 20, 2016)). Ultimately, the court should "consider the equities of each case with an eye toward the principles which underlie the Bankruptcy Code." *In re Nasralla*, 653 B.R. 247, 251 (Bankr. E.D. Mich. 2023) (citation modified).

Of the factors listed above, this case primarily implicates the fifth and sixth. Would any party benefit from reopening? And would the Court be able to grant any relief upon reopening? Numerous courts have explained that "[i]f reopening the case would be a futile act because the objective cannot be achieved, generally, the case should not be reopened." *Clary*, 440 B.R. at 123. *See also In re AP Framing, Inc.*, 669 B.R. 894, 898 (Bankr. N.D. Ga. 2025) ("[A] "[c]ourt will not reopen [a] case if doing so would be futile[.]"); *Roberts v. Vara (In re Roberts)*, 659 B.R. 271, 278–79 (Bankr. W.D. Pa. 2024) ("[A] bankruptcy case should not be reopened if it would be futile or a waste of judicial resources to do so."); *In re Oglesby*, 519 B.R. 699,

8

703 (Bankr. N.D. Ohio 2014) ("[W]here the court cannot afford the moving party the requested relief, the court does not abuse its discretion in refusing to reopen the case."). The question, then, is whether reopening this case would be futile, which requires the Court to examine the nature of the substantive relief the Debtor would seek upon reopening.

## B. The Personal Injury Claim was Property of the Bankruptcy Estate

As the Debtor puts it in her motion, she seeks to reopen this case for two related reasons—first, to amend her schedules to disclose the personal injury claim, and second, to administer the proceeds of that claim. Those reasons are related because, as the Eleventh Circuit has explained, "[t]he disclosure of postconfirmation assets gives the trustee and creditors a meaningful right to request, under section 1329, a modification of the debtor's plan to pay his creditors." *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239, 1245 (11th Cir. 2008). "When a debtor discloses assets acquired after confirmation, creditors may move the bankruptcy court to modify the plan to increase payments made by the debtor to satisfy a larger percentage of the creditors' claims." *Id.* The Court therefore must determine whether the Debtor and the Trustee can accomplish those goals in this case. And that determination depends, in turn, on whether the Debtor's personal injury claim is property of the estate in which creditors are entitled to share.

The law is clear that the Debtor's personal injury claim, which arose post-confirmation on May 1, 2023, was property of the bankruptcy estate in this Chapter 13 case. The starting point for determining whether property belongs to the estate is § 541(a)(1), which states that commencing a bankruptcy case "creates an estate" comprising "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(a)(1)'s scope is "broad" and includes causes of action. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9 (1983); *Estate of Arlene Townsend v. Berman (In re Fundamental Long Term Care, Inc.)*, 81 F.4th 1264, 1284 (11th Cir. 2023).

In a Chapter 7 case, § 541 alone governs which property interests of the debtor become property of the bankruptcy estate, and that analysis is generally straightforward. With certain statutory exceptions, "a Chapter 7 estate does not include . . . the assets [a debtor] acquires *after* the bankruptcy filing."[1] *Harris v. Viegelahn*, 575 U.S. 510, 513–14 (2015) (emphasis in original). *See also Bracewell*

---

[1] By its terms, § 541(a) provides that certain after-acquired property *does* become property of the bankruptcy estate. Under § 541(a)(5), the estate includes "[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—(A) by bequest, devise, or inheritance; (B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or (C) as a beneficiary of a life insurance policy or of a death benefit plan." 11 U.S.C. § 541(a)(5). Under § 541(a)(6), the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). And under § 541(a)(7), it includes "[a]ny interest in property that *the estate* acquires after the commencement of the case." 11 U.S.C. § 541(a)(7) (emphasis added).

10

*v. Kelley (In re Bracewell)*, 454 F.3d 1234, 1237 (11th Cir. 2006) (under § 541(a)(1),
"property of the [bankruptcy] estate is property the debtor had when the bankruptcy
case commence[d], not property he acquires thereafter").

In a Chapter 13 case, however, § 1306(a) provides that "[p]roperty of the
estate includes, in addition to the property specified in section 541 . . . (1) all property
of the kind specified in [§ 541] that the debtor acquires after the commencement of
the case but before the case is closed, dismissed, or converted . . . whichever occurs
first[.]" 11 U.S.C. § 1306(a)(1). This provision thus expands the bankruptcy estate's
scope in Chapter 13 cases beyond what § 541(a) specifies, such that "the Chapter 13
estate from which creditors may be paid includes both the debtor's property at the
time of his bankruptcy petition, and any . . . property acquired after filing."
*Viegelahn*, 575 U.S. at 514.

Complicating matters is § 1327(b), which states that "[e]xcept as otherwise
provided in the plan or the order confirming the plan, the confirmation of a plan vests
all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). As the Court has
recounted in detail in a recent case and will not belabor here, courts have struggled
to harmonize §§ 1306(a) and 1327(b). *See Macon v. Meredith (In re Macon)*, 669
B.R. 626, 644–46 (Bankr. S.D. Ga. 2025) (Coleman, J.). For purposes of this case,
it suffices to say that the Eleventh Circuit has conclusively reconciled those Code

11

sections in this jurisdiction in the case *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239, 1242 (11th Cir. 2008).

In *Waldron*, six months after the Chapter 13 debtors attained plan confirmation, the husband-debtor sustained personal injuries in a car accident. The husband sought and received bankruptcy court approval of his settlement with the tortfeasor. But when the husband moved for permission to settle his claims for underinsured motorist benefits without further court approval (of, presumably, the amount of the settlement), the bankruptcy court ruled that the underinsured motorist claims were property of the bankruptcy estate and ordered the debtors to amend their schedule of assets to reflect those claims. *Id.* at 1241. The district court affirmed.

On appeal, the Eleventh Circuit adopted what is sometimes called the "estate replenishment," or the "modified estate preservation," approach to reconciling §§ 1306(a) and 1327(b). Under that approach, "some property of the estate is vested in the debtor at confirmation, under [§] 1327(b), but property acquired later vests in the estate, under [§] 1306(a), until the case ends or is converted[.]" *Id.* at 1243. In the court's view, "[n]ew assets that a debtor acquires unexpectedly after confirmation"—like the husband's underinsured motorist claims—"by definition do not exist at confirmation and cannot be returned to him then" by operation of § 1327(b). *Id.* Put another way:

> While the case is pending, the post-petition property . . . [is] added to the estate until confirmation, the event that

12

> triggers [§] 1327(b) and "vests" the property of the estate in the debtor. That is, the property interests comprising the pre-confirmation estate property are transferred to the debtor at confirmation, and this "vesting" is free and clear of the claims or interests of creditors provided for by the plan, [§] 1327(b), (c). Finally, the . . . estate once again accumulates property by operation of [§] 1306(a) until the case is "closed, dismissed, or converted."

*Id.* (quoting *City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 962 (N.D. Ill. 1997)). Applying this estate replenishment approach, the court held that the husband's underinsured motorist claims were property of the bankruptcy estate because they were new assets acquired post-confirmation. *Id.*

So too here. The court confirmed the Debtor's plan on April 23, 2019, and the Debtor sustained the injury giving rise to her personal injury claim on May 1, 2023—post-confirmation. Thus, the personal injury claim, like the underinsured motorist claims in *Waldron*, was a new asset acquired unexpectedly after confirmation. It was therefore property of the bankruptcy estate. But that is not the end of the analysis. What remains is to determine whether the Bankruptcy Code would permit the Debtor's personal injury claim proceeds, which have yet to be liquidated, to be distributed to creditors at this late date.

C. The Debtor's Plan Can No Longer be Modified under § 1329

The purpose of requiring Chapter 13 debtors to disclose substantial assets acquired post-confirmation, as mentioned, is to "give[] the trustee and creditors a meaningful right to request, under [§] 1329, a modification of the debtor's plan to

13

pay his creditors." *Waldron*, 536 F.3d at 1245. Modification is thus the mechanism enabling creditors to share in a new asset acquired by the debtor post-confirmation. The problem here is that it's too late to modify the Debtor's plan.

Modification of a confirmed Chapter 13 plan is governed by § 1329(a), which provides in relevant part as follows:

> (a) At any time after confirmation of the plan *but before the completion of payments under such plan*, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> >
> > (2) extend or reduce the time for such payments;
> >
> > (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
> >
> > (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor . . . .

11 U.S.C. § 1329(a) (emphasis added). Post-confirmation plan modification must alter the confirmed plan in one of the four ways listed in § 1329(a). *Whaley v. Guillen (In re Guillen)*, 972 F.3d 1221, 1225 (11th Cir. 2020) ("Section 1329 permits debtors, unsecured creditors, and trustees to modify confirmed plans in any one of four ways[.]"). Here, a potential modification would increase the amount pledged to

14

unsecured creditors to account for any non-exempt proceeds from the personal injury claim.[2]

Two provisions of § 1329 bar modification in this case. First, § 1329(a) permits modification "[a]t any time after confirmation of the [original] plan but before the completion of payments under such plan[.]" 11 U.S.C. § 1329(a). "The provision plainly sets forth a temporal requirement[.]" *In re Stanke*, 638 B.R. 571, 574 (Bankr. N.D. Tex. 2022). "Consistent with the plain language of 11 U.S.C. § 1329(a) . . . 'it is largely undisputed' that a plan may not be modified once the debtor has completed payments under that plan." *In re Ivery*, 667 B.R. 317, 320 (Bankr. N.D. Miss. 2025) (quoting *Meza v. Truman (In re Meza)*, 467 F.3d 874, 878 (5th Cir. 2006)). "[I]f a trustee could amend a Chapter 13 plan after the debtor completes

---

[2] It is sometimes said that "the determination that a postconfirmation asset is property of the estate requires an increase in payments to creditors to meet the best interest of creditors test" of § 1325(a)(4). Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel, & Adam M. Goodman, *Chapter 13 Practice & Procedure* § 11:13 (June 2025 ed.). But strictly speaking, the best interest test (also called the liquidation test), which requires that unsecured creditors receive payments with a total value at least equal to the amount they would receive in a Chapter 7 liquidation, is a *prerequisite* of confirmation, including confirmation of a modified plan. *See* 11 U.S.C. § 1329(b)(1). It does not, by itself, *require* a plan to be modified. Arguably, moreover, "[p]roperty a debtor acquires after confirmation . . . is not properly considered in applying the best interest test to a postconfirmation modification because [] § 348(f)(1) excludes postconfirmation property from the Chapter 7 estate that is the subject of the hypothetical liquidation under the best interest test." *Chapter 13 Practice & Procedure* § 11:13. *See also In re Hill*, 652 B.R. 212 (Bankr. S.D. Ala. 2023) (concluding that "§ 348(f), not § 1306, controls the property to be included in the liquidation analysis at modification[.]"). Instead, "modification to require the payment of proceeds from postconfirmation property, or additional plan payments to account for its value, to creditors may be permissible based on the ability-to-pay policy." *Chapter 13 Practice & Procedure* § 11:13. The Eleventh Circuit referenced the ability-to-pay standard in *Waldron*, explaining that Congress intended "that the debtor repay his creditors to the extent of his capability during the Chapter 13 period." *Waldron*, 536 F.3d at 1246 (citation modified). *See also Hill*, 652 B.R. at 222–23.

his or her payments to the trustee, the mandatory nature of the discharge provision [11 U.S.C. § 1328] would be eviscerated." *Id.* (quoting *Meza*, 467 F.3d at 878). "Accordingly, the general rule is that if a debtor completes all plan payments before the trustee seeks modification, § 1329(a) bars the modification." *Id.* (citing *Meza*, 467 F.3d at 878).

Here, the Debtor completed her plan payments in 2024. The Trustee acknowledged that fact when he filed his June 11, 2024 notice of completion of plan payments, which informed the Debtor that "you have paid sufficient funds to complete your case."[3] (Dckt. 107). And on July 15, 2024, the Debtor received a discharge, which necessarily means that her plan payments were complete: § 1328(a) states that "the court shall grant" a discharge "as soon as practicable after completion by the debtor of all payments under the plan[.]" 11 U.S.C. § 1328(a). To permit the Debtor, the Trustee, or an unsecured creditor to modify the Debtor's plan at this juncture would be to contravene the plain language of § 1329(a).

---

[3] The case law draws a distinction between a debtor's completion of plan payments and the trustee's filing of a notice memorializing that fact. *See In re Zisumbo*, 519 B.R. 851, 859 (Bankr. D. Utah 2014) ("The plain reading of § 1329(a) unambiguously provides that any modification must be before the completion of payments under the plan, not when the Trustee submits a Notice of Completed Plan Payments or the debtor seeks a verification and request for a discharge."); *In re Ezzell*, 438 B.R. 108, 115 (Bankr. S.D. Tex. 2010) (noting that "it has generally been held that a plan is 'complete' when the debtor makes all the payments to the trustee"). So June 11, 2024, is the latest possible date on which plan payments could have been completed, but the Debtor could have completed them earlier.

Second, § 1329(c) provides that a modified plan "may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time."[4] 11 U.S.C. § 1329(c). "Section 1329(c) thus 'defines the temporal window within which modified payments . . . may be made by reference to the applicable commitment period.'" *In re Goldston*, 627 B.R. 841, 854 (Bankr. D.S.C. 2021). "[T]he modification cannot extend the payment period beyond five years after the first plan payment was due, and cannot extend the original commitment period of the debtor's disposable income except for cause." *In re Scarver*, 555 B.R. 822, 827 (Bankr. M.D. Ala. 2016).[5]

---

[4] The temporal limitations of § 1329(c) thus mirror those in § 1322(d)(2). Under § 1322(d), a below-median debtor's Chapter 13 plan "may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years." 11 U.S.C. § 1322(d)(2). Section 1329(c) similarly prohibits a modification that extends a plan beyond a below-median debtor's applicable commitment period except for cause, and in any case not for a period longer than five years. "Because the applicable commitment period for an above-median debtor is five years, the [§ 1329(c)] limitation now applies only in the case of a below-median debtor, for whom the applicable commitment period is three years." *Chapter 13 Practice & Procedure* § 11:11. This deliberate parallelism underscores the importance Congress placed on the maximum duration of a Chapter 13 plan.

[5] *See also McKinney v. Russell*, 567 B.R. 384, 390 (M.D. Ala. 2017) ("[A]s with the confirmation of a plan in the first instance, the court may not approve a modified plan that requires payments to be made more than five years after the first payment came due."); *In re Nelson*, 646 B.R. 810, 816 (Bankr. E.D. Wis. 2022) ("[A] request to modify a confirmed plan that expressly results in a plan payment period exceeding 60 months fails to comply with 11 U.S.C. § 1329 and cannot be granted."); *In re Talison*, 597 B.R. 87, 88 (Bankr. E.D. Mich. 2019) ("[A]pproval of this proposed

Here, the Debtor's applicable commitment period was 60 months, or five years. It is not evident from the record when exactly the first payment was due.[6] But given the April 23, 2019 confirmation date, the five-year period must have ended sometime in 2024. Thus, more than five years has elapsed since the first plan payment was due, and § 1329(c) likewise bars plan modification.

At the September 24, 2025 hearing, the Trustee's counsel acknowledged the temporal limitations of § 1329(a) and (c) but argued that modification is nevertheless permitted in these circumstances because the Debtor failed to disclose the personal injury claim. Counsel cited no cases for that proposition, and the Court has found none. To be sure, a few courts have flirted with the notion of equitably tolling the §

---

plan modification is impermissible, because the plan as modified would exceed the five-year limit in 11 U.S.C. § 1329(c).”). *Cf. In re Humes*, 579 B.R. 557, 560 (Bankr. D. Colo. 2018) (“Debtors should not have to make more than sixty payments[.]”).

[6] Courts disagree as to whether the language “the time that the first payment under the original confirmed plan was due” in § 1329(c) refers to the date the first pre-confirmation payment was due under § 1326(a)(1) or to the date the first post-confirmation payment was due. Judge Dalis held that “[t]he appropriate time from which to calculate the length of the Chapter 13 plan is the date at which the debtor is first obligated to begin making payments” under § 1326(a)(1). *Baxter v. Evans (In re Evans)*, 183 B.R. 331, 332–33 (Bankr. S.D. Ga. 1995) (Dalis, J.). Judge Dalis reasoned that to do otherwise would be to “impose an additional burden on . . . debtors, not authorized by the Code, requiring the making of pre-petition payments due pursuant § 1326(a)(1), but not counting those payments under the term set forth in the plan.” *Id.* at 333. In consequence, “[t]he five-year maximum repayment period imposed by [§ 1322(d)] and § 1329(c) would be impermissibly extended by the amount of time passing between filing and confirmation.” *Id.* His view has gained wide acceptance. *See Humes*, 579 B.R. at 560–61 (“Debtors should not have to make more than sixty payments because the confirmation process does not dovetail with the payment requirements.”); *In re Schuster*, No. 10–01175, 2015 WL 9282447, at *4 (Bankr. D.D.C. Dec. 18, 2015) (“Like the court in *Evans*, I conclude that when measuring the five-year maximum duration of a modified plan, the measurement runs from the date on which the first payment was due under 11 U.S.C. § 1326(a).”).

18

1329 limitations, but, as far as the Court can tell, none have done so. *See Stanke*, 638 B.R. at 577–78 ("There is no allegation or evidence of fraud by the [debtors], and, thus . . . equitable tolling does not apply."); *In re Zisumbo*, 519 B.R. 851, 859 (Bankr. D. Utah 2014) ("[T]here was no evidence that would support this Court applying equitable tolling" where debtor delayed disclosing inheritance as required by Bankruptcy Rule 1007(h).); *In re Zavala*, 366 B.R. 643, 651–52 (Bankr. W.D. Tex. 2007) ("[T]he court finds that there was insufficient evidence to invoke the doctrine of equitable tolling in this case."). In any event, the Court declines to read into § 1329 an exception found nowhere in the statutory text.[7]

D. Reopening Would Be Futile

Because the Debtor's confirmed plan can no longer be modified, reopening this case would be futile. Then Chief Judge Barrett so ruled in nearly identical circumstances. *See In re D'Antignac*, No. 05–10620, 2013 WL 1084214 (Bankr. S.D. Ga. Feb. 19, 2013) (Barrett, C.J.). In *D'Antignac*, the debtors' Chapter 13 plan was confirmed on August 8, 2005. Three years later, on August 22, 2008, the wife-

---

[7] The Court has previously assumed, without deciding, "that the trustee, in seeking to modify a confirmed plan, may circumvent the § 1329 modification requirements by obtaining the debtor's consent." *Macon v. Meredith (In re Macon)*, 669 B.R. 626, 664 (Bankr. S.D. Ga. 2025) (Coleman, J.). *See also Smith v. Meredith (In re Smith)*, 637 B.R. 758, 780 n. 23 (Bankr. S.D. Ga. 2022) (Coleman, C.J.). Here, at the September 24, 2025 hearing, the Court asked Debtor's counsel whether his client would consent to turn over any personal injury claim proceeds to the Trustee for distribution to creditors. Counsel declined to say whether his client would so consent, stating only that the claim "should be disclosed so that the Trustee can make [his] argument" and that "where we go from there is up to the Court." (9/24/2025 Hearing at 9:47-48 a.m.). The Court is unable, therefore, to find that the Debtor would consent to bypassing the § 1329 requirements.

19

debtor filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") for a cause of action that purportedly arose in June 2008. The debtors received their bankruptcy discharge on November 5, 2008, and the case was closed on February 5, 2009. In 2010, the wife, after receiving from the EEOC a right to sue notice, sued her employer in the District Court. Her employer moved for summary judgment, arguing, among other things, that the wife was judicially estopped from pursuing the discrimination lawsuit based on her failure to amend her bankruptcy schedules to disclose the cause of action. In 2012, the wife moved to reopen the bankruptcy case to make that disclosure.

Judge Barrett denied the wife's motion to reopen, for at least two reasons. First, "a [C]hapter 13 bankruptcy plan cannot provide for payments that extend beyond 5 years." *Id.* at *5. In *D'Antignac*, the wife "did not file her motion to reopen the case until more than seven years after the first payment became due under her [C]hapter 13 plan and more than three years after her case was discharged and closed." *Id.* Thus, by operation of §§ 1322(d) and 1329(a), "no additional assets [could] be administered under [the] [C]hapter 13 plan." *Id.* Second, it was "unknown if and when there [would] be any proceeds from [the] cause of action to distribute."[8]

---

[8] Judge Barrett also noted in *D'Antignac* that the final decree closing the case had discharged the Chapter 13 trustee, and no trustee had been reappointed, as Bankruptcy Rule 5010 requires before assets may be administered. *Id.* at *6. Similarly, in this case, the November 25, 2024 final decree closing the case discharged the Chapter 13 Trustee, and thus, in the case's present posture, there is no trustee to administer any assets. To deny reopening on this basis, however, would be to engage in circular reasoning, as Bankruptcy Rule 5010 permits reappointment of the trustee upon

*Id.* at *7. Judge Barrett explicitly declined to address whether the debtor in *D'Antignac* acted in good faith or bad faith. *Id.* at *7–8.[9]

Judge Barrett decided *D'Antignac* in 2013. Since then, at least two other bankruptcy courts have reached the same conclusion in similar circumstances. *See In re Maldonado*, 646 B.R. 917, 920–22 (Bankr. D. Utah 2022) (holding that "even if the [c]ourt reopened their bankruptcy case, the [d]ebtors could not seek a modification of their plan because it [was] . . . beyond the five-year limitation of §§ 1322 and 1329."); *In re Ingram*, 531 B.R. 121, 125–26 (Bankr. D.S.C. 2015) (finding "no potential benefit [to creditors] in reopening" because "[C]hapter 13's 60-month time limitation ha[d] long expired," so the debtors could not "propose an amended, approvable plan").

The Court has found one case reaching a conclusion contrary to that of *D'Antignac: In re Calixto*, 648 B.R. 119 (Bankr. S.D. Fla. 2023). In *Calixto*, the

---

reopening. *See* Fed. R. Bankr. P. 5010 ("In a reopened Chapter 7, 12, or 13 case, the United States trustee must not appoint a trustee unless the court determines that one is needed to protect the interests of the creditors and the debtor, or to ensure that the reopened case is efficiently administered.").

[9] In the *D'Antignac* debtor's employment discrimination suit, the District Court ultimately granted summary judgment to the employer based on the debtor's failure to disclose the cause of action in her bankruptcy case. *D'Antignac v. Deere & Co.*, No. CV 110-116, 2013 WL 12304295 (S.D. Ga. March 13, 2013) (Hall, J.). The debtor requested reconsideration, and the District Court denied that motion. *D'Antignac v. Deere & Co.*, No. CV 110-116, 2013 WL 6383113 (S.D. Ga. Dec. 5, 2013) (Hall, J.). The debtor then appealed to the Eleventh Circuit, which affirmed the District Court. *D'Antignac v. Deere & Co.*, No. 14–10048, 604 F. App'x 875 (11th Cir. 2015) (per curiam). The Supreme Court denied certiorari. *D'Antignac v. Deere & Co.*, No. 15–504, 136 S. Ct. 808 (2016).

debtor filed a Chapter 13 petition in 2017. In 2018, her plan was confirmed. Three years later, in 2021, she slipped and fell at premises owned by Gulfstream, giving rise to a personal injury cause of action. In 2022, she completed plan payments—paying unsecured creditors a 100% dividend—and received her discharge in the bankruptcy case. A month later, she sued Gulfstream in state court. She never amended her bankruptcy schedules to disclose the post-confirmation claim. Gulfstream moved for summary judgment in the state-court case, arguing that the debtor was judicially estopped from pursuing the case. The debtor then sought to reopen the bankruptcy case to disclose the personal injury claim.

The bankruptcy court granted the debtor's motion to reopen, reasoning that reopening would benefit the debtor and would not prejudice any other parties. The debtor would benefit because reopening would "enable her to satisfy a procedural technicality under binding Eleventh Circuit case law, the result of which may allow her to pursue her litigation claim on the merits against Gulfstream in state court." *Calixto*, 648 B.R. at 128. Elaborating on that "procedural technicality," the court explained that "[i]n the Eleventh Circuit . . . case law is clear that a [C]hapter 13 debtor has a 'continuing duty' to amend her bankruptcy schedules to disclose a post-confirmation litigation claim." *Id.* at 126. In other words, reopening would allow the debtor to fulfill that duty by disclosing to the bankruptcy court her claim against Gulfstream. Unsecured creditors would not be prejudiced since they were paid in

full. And Gulfstream would not be prejudiced because it would merely have to defend the claim on the merits in state court. *Id.* at 127–28. Balancing the equities, the court found that the debtor established sufficient cause to reopen under § 350(b).

The Court respectfully disagrees with the decision in *Calixto*, for two reasons. First, the case law is not so clear as to whether, or when, a Chapter 13 debtor must disclose post-confirmation causes of action.[10] Second, and more importantly, as

---

[10] Section § 521(a)(1) and Bankruptcy Rule 1007(b) itemize the documents that a debtor must file at the outset of a bankruptcy case, including schedules of assets, liabilities, income, and expenses. *In re Boyd*, 618 B.R. 133, 148–49 (Bankr. D.S.C. 2020). And no one disputes that "a debtor who has a duty to disclose under § 521(a) at the beginning of the case . . . but does not do so, continues to have that duty." *Id.* at 149. Bankruptcy Rule 1009(a)(1) facilitates that continuing duty: it provides that "[a] debtor *may* amend a voluntary petition, list, schedule, or statement at any time before the case is closed." Fed. R. Bankr. P. 1009(a)(1) (emphasis added). That Rule, as the Advisory Committee Notes put it, adopts a "permissive approach . . . to amendments of voluntary petitions and accompanying papers." Fed. R. Bankr. P. 1009 Advisory Comm. Notes. As to property acquired post-petition, however, the Code and the Rules have little to say. Section 521(f)(4) and Bankruptcy Rule 1007(h) require post-petition disclosures only in limited circumstances. *Boyd*, 618 B.R. at 149 n. 9. "Noticeably, neither Rule 1007(h) [n]or any other [B]ankruptcy [R]ule indicates that a [C]hapter 13 debtor must file a supplemental or amended schedule for . . . property acquired post-petition that become[s] part of the estate as a result of § 1306(a)." *Id.* at 149. And nowhere do the Code and Rules explicitly mandate disclosure of property acquired *post-confirmation*. *Id.* at 150. Turning to the case law, the Eleventh Circuit has at times recognized a continuing duty to disclose "changes in [the debtor's] financial situation during the pendency of [the] bankruptcy." *Waldron*, 536 B.R. at 1244. As surveyed in *Waldron*, those precedents include *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002); *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289 (11th Cir. 2003); and *Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339 (11th Cir. 2006). After surveying those precedents, the Eleventh Circuit in *Waldron* recognized a "postconfirmation duty of disclosure for Chapter 13 debtors," but it delineated that duty narrowly. A bankruptcy court, the Eleventh Circuit explained, "has the *discretion*, under Rule 1009, to require a debtor to amend his schedule of assets to disclose a new property interest acquired after the confirmation of the debtor's plan." *Id.* at 1246 (emphasis added). What's more, the Eleventh Circuit stated that "[w]e do not hold that a debtor has a free-standing duty to disclose the acquisition of any property interest after the confirmation of his plan under Chapter 13, as "[n]either the Bankruptcy Code nor the Bankruptcy Rules mention such a duty." *Id.* That sentence is somewhat ambiguous. Did the Eleventh Circuit mean, as literally written, that a debtor has no free-standing duty to disclose *any* post-confirmation asset, even a substantial one? Or did the court mean that a debtor has no free-standing duty to disclose *every* post-confirmation asset—in other

Judge Barrett explained in *D'Antignac*, a "bankruptcy court is not the appropriate forum to determine [a] judicial estoppel argument."[11] *D'Antignac*, 2013 WL

---

words, that a debtor must disclose substantial assets but not de minimis ones? The District Court in the *D'Antignac* debtor's employment suit took the latter view. *See D'Antignac v. Deere & Co.*, No. CV 110-116, 2013 WL 12304295, at *5. Finally, in *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010), decided two years after *Waldron*, the Eleventh Circuit acknowledged the possibility that its "current case law mandating a continuing statutory duty to disclose can be traced back to dicta in *Burnes* and incorrectly perpetuated as law by subsequent cases." *Robinson*, 595 F.3d at 1274. But, the court explained, "even if the reasoning in *Burnes* is dicta, it became the law of this circuit in the holdings" of *De Leon, Ajaka*, and *Waldron* by virtue of the Eleventh Circuit's "prior precedent rule." *Id.* The court in *Robinson* made no mention of the narrow holding in *Waldron*. Beyond the Eleventh Circuit's jurisprudence, bankruptcy commentators continue to debate the existence and scope of any continuing duty to disclose, including in a recent issue of the American Bankruptcy Institute Journal, which featured both sides of the debate. *See* Hon. Elizabeth L. Gunn and Nisha R. Patel, *To Tell or Not to Tell Isn't Really a Question: A Debtor's Duty to Disclose*, 44-OCT Am. Bankr. Inst. J. 30 (Oct. 2025) and David Cox, *"What Happens Post-Petition Stays Post-Petition!"*, 44-OCT Am. Bankr. L. Inst. J. 31 (Oct. 2025). In any event, even assuming that a Chapter 13 debtor has a continuing duty to disclose a substantial post-confirmation asset, the case law nowhere outlines the precise contours of that duty. When, for example, must a post-confirmation cause of action be disclosed? The cases cited above give little or no guidance on that point. The Court is therefore unable to determine whether the Debtor in this case violated any such duty.

[11] To be sure, the state court may consider the facts and circumstances of this bankruptcy case in deciding whether the Debtor is judicially estopped from pursuing her personal injury claim. In *Slater v. United States Steel Corp.*, the Eleventh Circuit ruled, in an en banc decision, that a federal district court cannot infer "that a plaintiff intended to make a mockery of the judicial system simply because he failed to disclose a civil claim." *Slater*, 871 F.3d at 1185. In so holding, the Eleventh Circuit overruled portions of its precedents *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289 (11th Cir. 2003) and *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002). Instead, the Eleventh Circuit held in *Slater*, the court should consider certain factors: "We hold that to determine whether a plaintiff's inconsistent statements were calculated to make a mockery of the judicial system, a court should look to all the facts and circumstances of the particular case. When the plaintiff's inconsistent statement comes in the form of an omission in bankruptcy disclosures, the court may consider such factors as the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered." *Slater*, 871 F.3d at 1185. This "inquiry allows a district court to consider any findings or other actions by the bankruptcy court that might help in determining whether the debtor purposely intended to mislead the court and creditors." *Id.* at 1186. The Supreme Court of Georgia has adopted the Eleventh Circuit's approach. *Fulton Cnty.*

1084212, at *7. *See also Matter of Dewberry*, 266 B.R. 916, 920 (Bankr. S.D. Ga. 2001) (Davis, J.) ("It seems self-evident that if [judicial estoppel] is invoked to protect the integrity of the judiciary, then it must be invoked in the [c]ourt in which the apparent self-serving contradiction occurred and in which the defense is first asserted."). The court in *Calixto* recognized that fact: "Ultimately, it will be for the state court to determine whether the Debtor is judicially estopped from pursuing this claim." *Calixto*, 648 B.R. at 128 n. 65. The Court finds that avoiding a judicial estoppel defense in some other court simply does not constitute cause to reopen a bankruptcy case under § 350(b).[12]

The Court thus agrees with Judge Barrett's ruling in *D'Antignac*. As in that case, the temporal limitations of § 1329 bar modification. And, because the Debtor's state-court personal injury case has only reached the discovery stage, the Court

---

v. *Ward-Poag*, 310 Ga. 289, 296 (2020) ("[B]ecause *Slater* was tailored to address situations like the current one where a party to a civil action was not a party to the bankruptcy proceedings in which an allegedly inconsistent position was taken, we conclude that the *Slater* test should be followed in cases such as the one here."). Incidentally, the issue of judicial estoppel in bankruptcy—specifically, whether a debtor's *potential* motive to deceive the bankruptcy court suffices for the scienter requirement—is currently pending before the Supreme Court. In *Keathley v. Buddy Ayers Constr., Inc.*, No. 24-60025, 2025 WL 673434 (5th Cir. March 3, 2025) (per curiam), the Fifth Circuit affirmed a district court's grant of summary judgment based on judicial estoppel. The Supreme Court granted certiorari on October 20, 2025. *Keathley v. Buddy Ayers Constr., Inc.*, No. 25-6, 2025 WL 2949568, --- S. Ct. --- (Oct. 20, 2025).

[12] In a sense, the Debtor *has* disclosed her personal injury claim by virtue of her motion to reopen, where she stated that she "has a personal injury pending from an automobile accident that occurred on May 1, 2023[.]" To require that further disclosure be accomplished in the form of amended schedules would be to elevate form over substance.

cannot determine when or if the Debtor's cause of action will generate any assets to distribute.[13] Under the factors used to determine whether to reopen a closed case, the Court finds that no relief would be available upon reopening, and that reopening would provide little or no benefit to any parties—certainly, creditors would benefit not at all. For these reasons, the Court finds that the Debtor has failed to carry her burden under § 350(b) of demonstrating cause to reopen.

## IV. Conclusion

At bottom, the Court holds that Congress meant what it said: a Chapter 13 plan cannot be modified after the debtor completes plan payments (§ 1329(a)) or more than five years after the first plan payment was due (§ 1329(c)). Both temporal

---

[13] Even if the Debtor had promptly disclosed the personal injury claim, and even if it had been liquidated in time for the plan to be modified under § 1329, it is not a *fait accompli* that the Court would have permitted modification. In *In re Hill*, 652 B.R. 212 (Bankr. S.D. Ala. 2023), the debtors in two separate cases were injured while shopping. The bankruptcy court denied the trustee's motions to modify their plans, explaining that "postpetition personal injury claims [are] categorically different from other types of postpetition assets like lottery winnings, inheritances, or non-spousal life insurance proceeds which might be more appropriately considered 'windfalls' that increase a debtor's ability to pay creditors." *Id.* at 224. In that court's view, "the injured debtor has given consideration in the form of his or her injury" or, more bluntly, has "'earned' the settlement through his or her pain and suffering." *Id.* The district court rejected the bankruptcy court's "novel conclusion that the settlement proceeds [were] not new assets and [were] instead consideration," but it affirmed the bankruptcy court's ruling that plan modification was not warranted. *Conte v. Hill*, No. 23-00221-KD-N, 2024 WL 140247, at *8 (S.D. Ala. Jan. 12, 2024). The Eleventh Circuit likewise affirmed. In so doing, the Eleventh Circuit reaffirmed that a bankruptcy court has discretion whether to confirm a modified plan, even one that meets all the statutory requirements. *Conte v. Hill (In re Hill)*, No. 24-10264, No. 24-10265, 2025 WL 2179249, at *4–5 (11th Cir. Aug. 1, 2025) (per curiam) (quoting *Guillen*, 972 F.3d at 1229). Here, at the September 24, 2025 hearing, the Debtor testified that her injuries required her to be hospitalized, although she was not asked to give much detail. Based on this limited record, the Court cannot at this time determine whether the Debtor would be required to modify her plan to distribute any proceeds in any event.

limitations bar plan modification in this case. Even if the Debtor's personal injury suit generates an asset that, under § 1306(a) and *Waldron*, belongs to the bankruptcy estate, that asset cannot now be distributed to creditors. For that reason, as in *D'Antignac*, reopening this case to allow the Debtor to disclose the personal injury cause of action would serve no purpose. Because reopening would be futile, the Court will, by separate order, deny the Debtor's Motion to Reopen.

Dated at Savannah, Georgia, this 25th day of November, 2025.

Edward J. Coleman, III, Judge
United States Bankruptcy Court
Southern District of Georgia